Brooke, J.
concurring, judgment of circuit court reversed, and that, of county court affirmed.
The opinion prepared by judge Carr in the above case was in the following terms.
Davison being in execution on a ca. sa. escaped, and afterwards, on motion of the plaintiff (with notice) the court from which the ca. sa. liad issued gave him leave to sue out a new execution on the judgment, not restricting Mm to a ca. sa. The question is, could the court do this on motion'? If so, the power must be derived from the common law, as we have no statute giving it. We must not confound this with the question whether, after an escape from execution, the plaintiff may retake his debtor by a new ca. sa. — a point well settled in the affirmative, both by the english cases, and our case of Carthrae et al. v. Clarke, 5 Leigh 268. and this whether it be a negligent or voluntary escape by the sheriff. fi is equally well settled, that after such escape the plaintiff may have a scire facias against the defendant, or an action of debt on the judgment. But can the court on motion award him a fieri facias ?- The only case in the english books, which looks like authority to this point, is Basset v. Salter, decided in the 28th *562 of Charles 2. and reported in 2 Mod. 136. and also in Freeman 212. We had in our library here (at Lewisburg) only Mod. Rep. aDl^ ^lere ¿he case is thus stated: “In an action for an escape, the question was whether the plaintiff may take out a ca. sa. or have a ji_ ja_. agajnst the defendant, after the sheriff or gaoler voluntarily suffer him to escape,” &c. This is the text:' but the margin has it, that the question was whether the plaintiff could take out a ca. sa. or a sci. fa.~malting quite a different case. It was clear that the text or the margin was wrong; and not having the books here to enable us to say which, we held the case under advisement, to consult the larger libraries at Richmond. This I have done; and the result is a strong belief that the margin is right and the text wrong. My first reason for this opinion is, that the same case, as reported by Freeman, says not one word about a fi. fa. And Freeman I understand to be a reporter of good credit, though his notes were at one time undervalued, from the circumstance of their having been stolen by a servant, and published without the privity of the family. Lord Mansfield (Cowp. 13.) speaks favourably of them: so does lord Loughborough, 3 Ves. 580. n. and so does the lord chancellor of Ireland, 1 Ball & Beat. 307. While Modern Reports are given to us under no name, andaré set down as “apocryphal authority.” ■ In reporting the case of Basset v. Salter, Freeman says, “ The question was no more than whether, after the gaoler had suffered a person in execution voluntarily to escape, the party at whose suit he was in might take him again. And the whole court held it so clear that he might be taken again, that they would not suffer it to be argued, it being so often lately resolved; as in the case of Crune v. King in this court, where the court was divided, and the case of Vinter v. Allen, where judgment was given in this court, and affirmed in a writ of error.” The ease of Crune r. King, referred to here, I have not met with in any other reporter; but Vinter v. Allen may be found in several books. Sir T. Jones (page 21.) reports it thus: “ An executor brought a sci. fa. on a judgment of debt for testator, against the defendant, quare executionem habere non debet. Defendant pleaded that he was taken in execution by a ca. sa. on this judgment, and committed to the Fleet, and that the warden permitted him to go at large; and demanded judgment. The plaintiff demurred.” The arguments of counsel are given at large; and the reporter concludes thus: “The first point in this case was divers times debated, in several cases, and judgment was given for the plaintiff by the whole court, Vaughan excepted, who was totis viribus against the judgment.” Now the case of Basset v. Salter, as here reported, is wholly different from the case in Modern Reports ; and this book, being of better authority, and supported by the references, ought (as it seems *563 to me) to outweigh the other. In a note to the case, it is said, “ The party may have a new ca. sa. or a sci. fa. or may bring •debt upon the judgment &c. or may have any kind of execution. 8 and 9 Will. 3 ch. 27, § 7.” — referring clearly to this statute for the power cf taking out any other execution. In the report of Basset v. Salter in 2 Mod. after stating the question, it is added, “ but the court would not suffer it to be argued, because it had been lately settled that it was at the election of the plaintiff to do either;” and many cases are cited in the margin. Row if we take the question to have been whether the plaintiff could take out another ca. sa. or sue a sci. fa. these cases do shew that the question had been settled: but if we say it was whether he could take out ¡mother ca. sa. or a fi. fa. there is not one of the eases (so far as I have been able to examine them) which touches at all the power of the plaintiff to take out a ji. fa. in such a case. But let us see how the case of Basset v. Salter has been understood by others. In Com. Dig. Escape. E. it is said, “ So if a prisoner escapes, and afterwards returns to the prison, the plaintiff may admit him in execution, though he has a rented]'' against the sheriff. 1 Venir. 269, 2 Lev. 109, 132. Or he may retalie hint by a new ca. sa. if the first he not returned and filed. 3 Rep. 52. b. So he may retake him in all cases upon a negligent escape, for the sheriff may be insufficient. 1 Sid. 330. 1 Venir. 4, 269. So though the escape be voluntary by the gaoler, and without the plaintiff’s consent. 1 Sid. 330. 1 Venir, 4. 1 Lev. 211. 2 Mod. 136.” — citing this ease of Basset v. Salter, simply to shew that after a voluntary escape by the gaoler, the plaintiff might retake his debtor by another ca. sa. Coniyn then proceeds thus: “And now by the statute of 8 and 9 Will. 3. ch. 27. it is enacted, that if a prisoner in execution in the Marshalsea or Fleet escape by any means, the plaintiff may retake him by ca. sa. or sue out any other execution against him as if never in custody.” Here it is evident, that the writer considers the power of suing oul any other execution against the debtor after an escape, as given by this statute, and not as existing before it at the common law. Again, in Bac. Abr. Escape. C. where the difference between voluntary and negligent escapes is discussed, it is said: “It was formerly held, that whore a sheriff suffered a prisoner in execution to make a voluntary escape, the prisoner was in such case absolutely discharged from the creditor, and that the right of action was entirely transferred against the sheriff, who by means of such escape became debitor ex delicto. But the later resolutions have been contrary; and it has been adjudged that where a sheriff suffered a voluntary escape, the plaintiff' might have a new action of debt or sci. fa. quare executionem non, against the prisoner;” and to prove this, the very case of Basset *564 v. Salter is cited. The writer then adds the extract from 8 and 9 Will. 3, ch. 27. giving the plaintiff a right, after escape, to sue forth any other land of execution on the judgment, as if the body of the prisoner had never been taken in execution; and this statute certainly exhibits as giving a new power, not possessed at common law. In Yin. Abr. Escape. E. note to pi. 11. it is said, “In case of an escape against the will of the sheriff, either plaintiff or sheriff may retake; hut on escape with consent of the gaoler, the party only has remedy to take, not the sheriff: if with consent of the plaintiff, then neither plaintiff nor sheriff can retake him, though the debt be unsatisfied. Show. 177. cites Alanson v. Butler, and says it is true law and settled. 2 Mod. 136. Basset v. Salter, same point: and the court would not suffer it to be argued,” &c. Here again we find the case of Basset v. Salter understood as settling a point not touching at all the power to take out a fi. fa. These considerations satisfy me that Basset v. Salter is misreported in Mod. Rep. and in truth is not at all applicable to the question before us. Take away this case, and the position that after a ca. sa. executed there can issue a fi. fa. without a scire facias, has no support whatever. On the contrary, the clear unbroken stream of authority shews that on an escape from execution the plaintiff was confined to his new ca. sa. unless he chose to bring debt upon his judgment, or sue out a scire facias quare executionem habere non debet. The statute of 8 and 9 Will. 3, ch. 27. changed this state of the common law in England; but with us no such statute has been enacted.
It is insisted, however, that the court may, on motion, award execution anew, because it is the most speedy 'mode of enforcing their own judgment, and gives the defendant the same opportunity of defence that he could have on a scire facias, as the court might in their discretion impannel a jury to try any facts alleged. If this reasoning be sound, it would seem to dispense almost entirely with the use of the writ of scire facias. In the case before us, suppose a scire facias had been resorted to: what might the defendant have pleaded? I presume there can be no question that he might have pleaded either mil tiel record, or payment since the judgment, or a release, or that the debt had been levied on a fieri facias, or his lands extended for it, or his body taken on a ca. sa. and yet remained in execution, or had been discharged by the plaintiff. All these are matters in bar arising since the judgment, of which the defendant would have a right to avail himself. Is it supposed that all or any of these pleas, with their replications, rejoinders, surrejoinders &c. could be as well brought forward on motion in open court, as by the regular proceedings at rules? If so, what need of a scire facias in any case? *565 The general rale laid down in the books is, that “where anew person, not a party to the judgment, derives a benefit by or becomes chargeable to the execution of it, there must be a scire facíasBut if the reasoning here be correct, a motion would an-r-wer every purpose, in a more summary and less expensive man-nor. A defendant dies after judgment, or a feme sole marries after judgment; you have nothing to do but make your motion against the executor or husband. For one, I cannot consent to these innovations upon the settled principles and practice of the common law, without a statute to authorize them.
I think the judgment of the circuit court, reversing that of the county court, should be affirmed.